# Exhibit 1

| | |
|---|---|
| 1  BLACKWELL LAW OFFICE, PLLC | |
|    818 N. 5th Ave |  |
| 2  Phoenix, AZ 85003 | **COPY** |
|    Tel: (480) 227-4984 | |
| 3  Fax: (602) 865-1527 | JAN 16 2014 |
|    State Bar No. 023588 |  |
| 4  Jocquese@azjustice.com | MICHAEL K. JEANES, CLERK |
|    Jocquese L. Blackwell | M. GARCIA |
| 5  Attorney for Plaintiff | DEPUTY CLERK |

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

LYNN CRINER, EDGAR ELMO CRINER, the natural children of Cody Gene Criner; and the ESTATE OF CODY GENE CRINER,

Plaintiffs,

vs.

CITY OF PHOENIX, a public entity; CITY OF PHOENIX POLICE DEPARTMENT; PHOENIX POLICE CHIEF DANIEL GARCIA in his official capacity as Chief of the City of Phoenix Police Department; DANIEL GARCIA and JANE DOE GARCIA, a married couple; JOEL LEAVITT and JANE DOE LEAVITT, a married couple; RONALD BULTMAN and JANE DOE BULTMAN, a married couple; RALPH RUELAS and JANE DOE RUELAS; LESLEY FISHER and JANE DOE FISHER, a married couple; JOHN DOE OFFICERS I-X; JANE DOE OFFICERS I-X; JOHN DOE SUPERVISORS I-X; JANE DOE SUPERVISORS I-X; JOHN DOES I-X; JANE DOES I-X; BLACK CORPORATIONS I-X; and WHITE PARTNERSHIPS I-X,

Defendants.

No. CV2014-000400

COMPLAINT

Tort – Non-Motor Vehicle; Wrongful Death

Plaintiff, for her complaint, alleges and states the following:

## COMPLAINT

Plaintiffs Lynn Criner, the mother of Cody Gene Criner, Edgar Elmo Criner, Cody Criner's father, C▮ K▮ R▮, Cody Criner's biological son, E▮ C▮, Cody Criner's biological daughter and the Estate of Cody Gene Criner (collectively "Plaintiffs"), for their Complaint against Defendants, hereby allege as follows:

## JURISDICTION & VENUE

1. Plaintiffs bring this action pursuant to A.R.S § 12-611 *et seq.*, DEATH BY WRONGFUL ACT.

2. Plaintiffs have satisfied the provisions of A.R.S. § 12-821.01 by serving upon Defendants a notice of claim. Pursuant to A.R.S. § 12-821.01(E), the claim is deemed denied because more than sixty days have elapsed without response since the date of service.

3. This court has jurisdiction of Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1988. Additionally, this court has jurisdiction over Plaintiffs' state and federal claims pursuant to Article 6, § 14 of the Arizona Constitution.

4. Venue is proper in this court pursuant to A.R.S. § 12-401, as the defendants are residents of Maricopa County, Arizona and the events underlying this lawsuit occurred in Maricopa County.

## GENERAL ALLEGATIONS

5. Plaintiffs re-allege and incorporate, by reference, their claims, facts, and allegations in the paragraphs above, as set forth fully herein.

6. For all material times, Plaintiffs C▮ K▮ R▮, and E▮ C▮ were minor individuals and are the surviving children of Cody Criner ("Cody"), who was residing in Maricopa County, Arizona at the time of the incident complained herein.

7. Cody's mother Lynn Criner ("Lynn") is the personal representative of Cody's Estate.

8. Defendant City of Phoenix (the "City") is a public, municipal entity, formed and designated as such pursuant to Title 9 of the Arizona Revised Statutes and, as such, is

subject to civil suit and may be held independently liable as an entity or municipality, and vicariously liable for the wrongful conduct of its officers, employees, agents, districts, and divisions/sub-divisions, including the City of Phoenix Police Department, Phoenix Police Department Chief Daniel V. Garcia ("Chief"), and its officers and employees of their division.

9. Defendant City of Phoenix Police Department is a subdivision of the City, pursuant to Chapter III § 3 of the City of Phoenix Charter, and constitutes an independent, jural entity subject to civil suit.

10. At all times material herein, Defendant Chief Garcia was appointed the Chief of the Phoenix Police Department. Defendant Chief Garcia had ultimate authority and supervisory responsibility for Phoenix Police operations, including the use of force. In such capacity, the Chief was an officer, agent, and employee of the City and the Phoenix Police Department, with the authority and responsibility to establish policies, practices, customs, procedures, protocols, and training. Defendant Chief Garcia's actions or inactions constitute actions of the City and the Phoenix Police Department. The City and the Phoenix Police Department are vicariously liable for Defendant Chief Garcia's wrongful conduct, as alleged herein. The Chief is named both in his official and individual capacity for purposes of this Complaint.

11. At all times material herein, Defendants Chief Garcia, Officer Joel Leavitt, Officer Ronald Bultman, Officer Ralph Ruelas, and Officer Lesley Fisher ("Officers") were agents and employees of the City and the Phoenix Police Department who, at all times of the events complained of herein, were acting within the course and scope of their employment and under color of law. Defendants engaged in deliberate policies, customs and practices employed by the City and Phoenix Police Department which resulted in Cody's death. Defendants' engagement in such policies, customs and practices constitute actions of the City, Chief Garcia and the Phoenix Police Department. The City, Chief Garcia, and the Phoenix Police Department are vicariously and directly liable for Cody's wrongful death.

12. Police Chief Garcia and the Phoenix Police Department Operations Orders use

3

of force policy allows officers to be callously indifferent and deliberately violate citizens' rights as it pertains to adequately training its police personnel in the appropriate lawful and constitutional policies, procedures, practices, protocols and customs for the use of force and recurring circumstances that Phoenix Police officers face on a daily basis.

13. Phoenix Police Department Operations Orders section 1.5(4)(H) is arbitrary and capricious and unconscionably subjective because the policy for the use of deadly force fails to adequately address the amount of force to be used in fluid situations. As such it leads to unpredictable outcomes when the level of threat ceases to necessitate the use of deadly force.

14. Chief Garcia and the Phoenix Police Department exhibited deliberate indifference in several ways.

15. Chief Garcia and the City failed to acknowledge and institute new training protocols in light of the increase of police involved shootings prior to Cody's death.

16. From January 1st, 2013, up until Cody's death on the 16th, there were numerous Phoenix Police Department officer-involved shootings. Chief Garcia and the City failed to address those shootings and failed to incorporate any proper training protocols pertaining to the use of force that may have prevented the incident, which resulted in Cody's death.

17. Chief Garcia, the City, and the Phoenix Police Department protocols and procedures for Officer training were deficient because they failed to train Officers to continuously reassess the level of threat in dynamic situations. The current Phoenix Police Department Operations Orders use of force policies are arbitrary and capricious because they do not address how officers should assess the level of force required in real-time.

18. The current Phoenix Police Department Operations Orders were functionally obsolete because they provided improper subjective discretion and failed to provide a distinguishable framework of boundaries that should be used when assessing the appropriate level of force.

19. Chief Garcia, the City, and the Phoenix Police Department's failure to address the rise in the number of officer-involved shootings in the month of January in light of the

4

increasing number of shootings in 2011 and 2012 illustrates the deliberate indifference that Phoenix Police Department officers were more likely to violate the constitutional rights of the citizens they serve.

20. Chief Garcia, the City, and the Phoenix Police Department's failure to log the data surrounding the officer-involved shootings, and determine whether there was a trend and or factors that led to the unprecedented increase of these shootings illustrates a deliberate indifference that the Phoenix Police Department officers were more likely to violate the constitutional rights of the citizens they serve.

21. Chief Garcia, the City, and the Phoenix Police Department's failure to address the unprecedented increase of officer-involved shootings between 2011 and 2013 and their failure to reform the use of deadly force operations orders allowed the Phoenix Police Officers to continue to employ obsolete policies and practices and illustrates a deliberate indifference that the Phoenix Police Department officers were more likely to violate the constitutional rights of the citizens they serve.

22. Chief Garcia, the City, and the Phoenix Police Department failed to reassess the Phoenix Police Department Operations Orders use of deadly force, which substantially contributed to Cody's death.

23. At all times material, Defendants Police John Does I-X and/or Police Jane Does I-X were officers, agents, and employees of the City, Chief Garcia and the Phoenix Police Department, acting within the course and scope of their employment and under color of law. These Defendants engaged in a deliberate policy, custom or practice employed by the City and Phoenix Police Department, which resulted in Cody's death. The City, Chief Garcia, and the Phoenix Police Department are vicariously and directly liable for their wrongful conduct as alleged herein.

24. The true names, capacities and relationships, whether individual, corporate, partnership or otherwise of all John and Jane Doe Defendants, Black Corporations and White Partnerships, are unknown at the time of filing of this complaint, and are being designated pursuant to Rule 10(f), Ariz. R. Civ. P. and applicable federal and state law. Plaintiffs further allege that all fictitiously named Defendants were jointly responsible for

5

the actions, events and circumstances underlying this lawsuit, and that they proximately caused the damages stated in this Complaint. Plaintiffs will amend the Complaint to name the unidentified individuals once the identities, acts, omissions, roles and responsibilities of such Defendants are learned through discovery.

## FACTUAL BASIS OF CLAIM

### Introduction

25. Plaintiffs re-allege and incorporate by reference the claim, facts, and allegations in the paragraphs above, as if set forth fully herein.

26. On January 16, 2013, Sylvia Lopez called 911 to report a suspicious vehicle and person in her neighborhood. Sylvia believed someone was attempting to burgle a neighbor's home on her street. Sylvia did not believe her neighbor was home at the time. When police arrived, they heard sounds coming from within the home. The officers announced their presence and demanded the suspect, later determined to be Cody Criner, to exit the residence and surrender to police custody or the police threatened to release an attack dog into the home. Cody quickly exited the home after hearing the command. Cody began to run northbound on Capistrano Ave, and a foot pursuit ensued. Less than one minute after exiting the home, Cody had been shot three times. Two bullets penetrated his back, one exiting through his liver and the other lodging in his shoulder. The final bullet traveled through his rib, lung, and heart, and is believed to be the fatal gunshot wound. Cody died about ninety minutes later.

27. Officers allege that Cody was holding a firearm in his hand while running. Before the final shots were fired by Officer Ruelas, however, no witness saw Cody holding a weapon. Michael Gaffney ("Michael"), a City of Phoenix firefighter, witnessed the entire event. Michael stated that he, his son and his uncle-in-law were in Michael's garage playing ping-pong with the garage door open. Michael saw his neighbor's vehicle stop in front of his house for approximately thirty seconds before driving off. Michael felt something was odd and decided to leave his garage to check on the status and wellbeing of his neighbor. When Michael got to the northwest corner of Capistrano Ave., he saw three police vehicles parked on the far end of the street. Michael told Bruce Gottschall

6

("Bruce"), his uncle by marriage, and his son to go back to Michael's home.

28.   While standing in the middle of Capistrano Ave., Michael saw a person later determined to be Cody Criner running east on Capistrano Ave., away from three police officers in pursuit of Cody. Michael noticed that Cody had a bag in his left hand as he ran from the police. Michael also states that he heard the police yell, "Stop, put your hands up." Michael stated he did not believe officers had their weapons drawn at this point and planned on assisting the officers if Cody got close enough to him. Michael saw one officer take a "swipe" at Cody, but Cody eluded the swipe and kept running. Michael stated he saw Cody throw a bag towards a residence on the north side of Capistrano Ave. After Cody threw the bag, Michael stated he saw what appeared to be a semi-automatic handgun in Cody's left hand. Michael did not hear any additional commands from the police for Cody to drop anything.

29.   Michael states that Cody did not point the object in his hand directly at him but as Cody ran, the object seemed to be pointed in his direction. As Michael turned north to run, he heard a gunshot. Michael turned back south and heard the second gunshot. Michael did not know where the gunshots were coming from. Michael walked over to 41st Place and Capistrano Ave., and noticed Cody lying on his back with his head to the south and his feet to the north. At this point, Michael estimated he was about 30 to 35 feet away from Cody. Michael noticed Cody's arms were bent at the elbow and raised off the ground at a 45-degree angle. Michael did not see Cody holding anything. It was at this time that Michael then saw Officer Ralph Ruelas walk up to Cody with his gun drawn from about 8 to 10 feet from Cody's body and fire two shots. Officers noticed that Michael was standing nearby and yelled, "Get the fuck out of here!"

30.   Bruce told a very similar version of the event. Bruce stated that he heard the first two shots when he reached the intersection of 41st Place and Western Star Blvd. Bruce then walked back to see where Michael was. When he arrived at Capistrano Ave., Bruce estimated Michael was about 20 to 30 feet north of Cody. Bruce had an unobstructed view of Cody lying on the ground. Bruce stated Cody's feet were to the west and Cody's head was to the east. Bruce also stated that he did not see anything in Cody's hands when Cody

was shot by Officer Ruelas.

### Defendants' Dangerous Customs, Policies and Practices

31. The City and Phoenix Police Department were deliberately indifferent because the Operations Orders they employ are functionally obsolete and included intentional policies, customs and practices that resulted in Cody's death.

32. The Phoenix Police Department Operations Orders use of force policy allowed officers to be deliberately indifferent when they employed the use of force on Cody, specifically when Cody no longer posed any threat of violence to Officers or the public.

33. The current Phoenix Police Department Operations Orders policy on the use of force allowed officers to be deliberately indifferent when they employed deadly force on Cody, even after they observed Cody's inability to resist arrest after being shot.

### FIRST CLAIM FOR RELIEF

### Negligence—All Defendants

34. Plaintiffs incorporate the allegations in the paragraphs above as set forth as if set forth fully herein.

35. Defendants have a statutory and common law duty to assure the safety and wellbeing of persons in their care and custody to include using only necessary and reasonable force.

36. Officers breached their duty as identified by the allegations set forth in the paragraphs above, by subjecting Cody to deadly force, shooting Cody when he had already been shot multiple times, and shooting Cody when he neither had a weapon nor posed any threat of harm.

37. The City, Phoenix Police Department, and Chief Garcia are liable for the screening, hiring, training, retaining, and supervision of all employees and agents. This responsibility includes ensuring such employees and agents satisfy all federal, state, and applicable standards. It also includes making certain that police policies, procedures, practices, protocols, customs, and training satisfy all federal, state, and applicable standards. Additionally, it includes reasonably responding to known problems or

8

improper customs, policies, practices, procedures, training, and conditions. Responding to known problems includes changing policies after notice of a remarkable increase in the number of officer-involved shootings in the beginning of 2013, notwithstanding the fact that the number of Phoenix Police Department officer-involved shootings had risen in the preceding years. The City, Phoenix Police Department, and Chief Garcia were negligent in the performance of the above-mentioned duties and responsibilities.

38. The City of Phoenix, Phoenix Police Department, and Chief Garcia breached their duties, as identified by the allegations set forth in the paragraphs above, by: failing to properly screen, hire, retain, and supervise its employees; ratifying improper conditions, customs, policies, procedures, and practices; implementing, utilizing, and permitting unreasonably dangerous policies, practices, protocols, customs, and training with respect to the use of deadly force.

39. Officers were at all times material hereto, acting within the course and scope of their employment. The City of Phoenix is vicariously liable for the actions of its officers, to include the actions and failures to act by Police Chief Garcia.

40. Defendants breached their duties owed to Cody, as identified by the claims, facts, and allegations set forth in the paragraphs above.

41. Defendants' breach of duties caused or substantially contributed to cause Cody's death.

42. As a result of Defendants' negligence, Lynn, Edgar and Cody's children have been deprived of the continued companionship and familial society of their son and have suffered and will continue to suffer in the future a loss of love, affection, companionship, care, protection, and guidance, as well as pain, grief, sorrow, anguish, stress, shock, and mental suffering. Additionally, Plaintiffs have and will continue to suffer economic and noneconomic damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

### Gross Negligence—All Defendants

43. Plaintiffs re-allege and incorporate by reference the claims, facts and allegations in the paragraphs above as if set forth fully herein.

9

44. Defendants acted or failed to act, despite knowing or having reason to know that Cody was or would be inappropriately subjected to an unreasonable risk of serious harm and injury as a result of their actions and inactions. Defendants subjected Cody to reckless and deadly force and failed to intervene to prevent the use of such force, as alleged above.

45. A reasonable police officer with the proper training, acting under similar circumstances, would have known not to use deadly force on Cody when he was shot without a weapon and posed no threat of harm to officers or the public.

46. Officers were reckless and grossly negligent in the handling, treatment, and care of Cody.

47. The City, Phoenix Police Department, and Chief Garcia, directly and through its employees and agents, were reckless and grossly negligent in the screening, hiring, retention, training and supervision of their Officers, and potentially others.

48. Defendants' breach of duties, as outlined above, constitutes gross negligence, which was the proximate cause of Cody's death.

49. As the result of Defendants' gross negligence, Lynn, Edgar, and Cody's children, as Cody's survivors, have been deprived of the continued companionship and society of their son, and have suffered and will continue to suffer in the future a loss of love, affection, companionship, care, protection, guidance, as well as pain, grief, sorrow, anguish, stress, shock, and mental suffering, and have suffered both economic and non-economic damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
**The City of Phoenix Violated 42 U.S.C. § 1983 for its Unconstitutional Policies, Customs, and Failure to Properly Screen, Hire, Train, Retain, and Supervise its Officers**

50. Plaintiffs re-allege and incorporate by reference the claims, facts and allegations in the paragraphs above as if set forth fully herein.

51. The City, the Phoenix Police Department, and Chief Garcia failed to appropriately address the level of force to be used after a suspect has been subdued but still may pose a threat when they failed to revise their Operations Orders. The Phoenix Police

Department Operations Orders had not been revised since April 2007, at the time Cody was killed, notwithstanding the continued increase in officer-involved shootings since 2011. All officers involved used different methods of force during this fluid situation. All of which are permitted under the Phoenix Police Department Operation Orders.

52. The City, the Phoenix Police Department, and Chief Garcia failed to adequately train officers in the Phoenix Police Department Operations Orders use of force policy, because the current Phoenix Police Departments Operations Orders use of force policy is arbitrary and capricious and fails to address how Phoenix Police officers should assess the level of force required in fluid situations. Because the Phoenix Police Department Operation Orders are arbitrary, each officer's use of force during this fluid situation is highly polarized. Officer Fischer went back to his car to chase a fleeing suspect. Officer Bultman issued an impact push to stop Cody's flight and then discharged his sidearm when he perceived an immediate threat to himself after seeing what he perceived as a handgun in Cody's hand. Officer Leavitt also discharged his firearm after he perceived a threat of a handgun in Cody's hand. Neither officer ordered Cody to drop the weapon they allegedly saw. Officer Ruelas states he heard Officer Bultman yell "gun, gun" which made him draw his weapon. Officer Ruelas never ordered Cody to drop a weapon. After hearing to shots and seeing Cody's Arms flailing and his body twisting from the bullet impacts, Ruelas followed his training and issued what he believed to be the adequate amount of force in this situation. Witness at the scene state Officer Ruelas fired the two shots that killed Cody while Cody was unarmed and on the ground. Nonetheless, the circumstances revolving around Cody's death show how Chief Garcia and The City in relying on the Phoenix Police Department Operation Orders to train each officer does not give them a framework to follow in fluid situations and as a result Officer Ruelas in relying on the arbitrary and capriciousness of the Police Department Operation Orders failed to reassess the situation which resulted in Cody's death.

53. Phoenix Police Department Operations Orders section 1.5(4)(H) is arbitrary and capricious and unconscionably subjective because the policy for the use of deadly force fails to adequately address the amount of force to be used in fluid situations. As such

11

it leads to unpredictable outcomes when the level of threat ceases to necessitate the use of deadly force. Officer Ruelas stated he heard two gunshots go off prior to firing his weapon, but from his vantage point neither shot appeared to strike Cody. Officer Ruelas's rationale for firing his weapon illustrates the outdated Operations Orders. If officers were properly trained to constantly reassess the level of threat and apply the appropriate use of force, to include communicating with other officers that belief they have hit their intended target, Cody would likely still be alive. Officer Bultman and Officer Leavitt both claim they saw their gunshots strike Cody, yet neither officer made it known to anyone else. Once Cody had been shot twice in the back, the level of potential threat was minimized and based on civilian witness statements, the final shots fired were groundless. Moreover, 1.5(4)(H) is unclear as to what circumstances would justify when the use of deadly force is no longer necessary. Because of this ambiguity, Ruelas was unable to asses appropriately if Cody still posed a threat.

54. Chief Garcia, the City, and the Phoenix Police Department's failure to log the data surrounding the officer-involved shootings, and determine whether there was a trend and or factors that led to the unprecedented increase of these shootings illustrates a deliberate indifference that the Phoenix Police Department officers were more likely to violate the constitutional rights of the citizens they serve.

55. Chief Garcia, the City, and the Phoenix Police Department's failure to address the unprecedented increase of officer-involved shootings between 2011 and 2013 and their failure to reform the use of deadly force operations orders allowed the Phoenix Police Officers to continue to employ obsolete policies and practices and illustrates a deliberate indifference that the Phoenix Police Department officers were more likely to violate the constitutional rights of the citizens they serve.

56. The City, through its agents and policymakers, establish policies for the Phoenix Police Department and oversee the official Phoenix Police Department Operations Orders. The City also oversees services provided by Phoenix Police Department officers, and evaluates, certifies, and maintains compliance with applicable state and national standards. Such actions, directly or by ratification, constitute official municipal policies,

12

customs, and practices.

57. The City has oversight and supervisory responsibility over its officers, employees, and agents for purposes of police matters.

58. Despite its knowledge and notice of the continuous increase in officer involved shootings since 2011, the City was deliberately indifferent to the constitutional rights of those it serves by inadequately training police officers in the appropriate lawful and constitutional policies, procedures, practices, protocols, and customs regarding the appropriate use of force in recurring situations.

59. Despite its knowledge and notice of the continuous increase in officer involved shootings since 2011, the City was deliberately and callously indifferent to the constitutional rights of those that they serve in the screening, hiring, retaining and supervising police personnel, employees, and agents.

60. The City's deliberate, reckless, and callous actions substantially contributed to Cody's death including the deadly use of force.

61. The wrongful conduct of the City, as described herein, constitute violations of 42 U.S.C. § 1983. With deliberate and callous indifference, the City deprived Cody, Lynn, Edgar and Cody's children of rights secured to them by the Constitution and laws of the United States, including the right to continued familial and societal relationship, as guaranteed by the Fourth and Fourteenth Amendments.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages.

63. The wrongful conduct of the City was in reckless disregard of the rights of Cody, Lynn, Edgar and Cody's children, and punitive damages in an amount to be determined by a jury should be awarded to deter and prevent others from acting in a similar manner in the future.

### FOURTH CLAIM FOR RELIEF
**Defendants Violated Plaintiffs' Rights under the Fourth and Fourteenth Amendment and 42 U.S.C. § 1983 to be Free from Interference with Their Rights to Family Society and Companionship of Cody**

64. Plaintiffs re-allege and incorporate by reference the claims, facts and

allegations in the paragraphs above as if set forth fully herein.

65. The reckless, intentional and deliberate acts and omissions of Officers were the direct and legal cause of the deprivation of Lynn, Edgar and Cody's children's constitutionally protected rights under the Fourteenth Amendment to the care, companionship and familial society of Cody, their son and father.

66. The acts and omissions of the Officers involved were knowingly, intentionally, and maliciously for the purpose of oppressing and inflicting injury upon Lynn, Edgar and Cody's children in reckless, wanton, and callous disregard of their civil rights. By reason thereof, Lynn, Edgar and Cody's children each seek exemplary and punitive damages from Defendants.

## FIFTH CLAIM FOR RELIEF
### Officers Violated Cody's Rights under the Fourth Amendment and 42 U.S.C. § 1983 to be Free from the Unreasonable Use of Force

67. Plaintiffs re-allege and incorporate by reference the claims, facts and allegations in the paragraphs above as if set forth fully herein.

68. At no time were officers threatened by Cody, in any way, after he was shot twice in the back and was lying on the ground.

69. Cody had nothing in his hands when Officer Ruelas shot Cody on the ground.

70. Officers were either inadequately trained in the use of force policies described in the Phoenix Police Department Operations Orders, or the policies were deficient. All officers involved employed different tactics of force based on the vagueness of the Phoenix Police Department Operation Orders.

71. For the reasons set forth above, the Officers' use of deadly force on Cody was a violation of Cody's constitutional rights because the Phoenix Police Department Operations Orders use of force policy in place at the time of Cody's death was arbitrary and capricious and did not address how officers should assess the level of force required in fluid conditions. 1.5 (4)(H) does not differentiate situations when the use of deadly force is permitted during fluid situations. Based on the actions by Officer Ruelas, 1.5 (4)(H) does not address the justification of the use of deadly force when the threat level changes from

deadly to non-lethal.

72. The nature of these actions was so extreme and outrageous that an award of punitive damages is warranted.

73. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered damages.

## JURY TRIAL

74. Plaintiffs hereby request and demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for damages for judgment against Defendants as follows:

a) General damages in an amount to be proven at trial, as to the causes of action, claims, and theories of relief alleged herein;

b) Punitive damages in an amount deemed just and reasonable against the individual Defendants as to the causes of action, claims, and theories of relief alleged herein;

c) Costs and attorneys' fees against all Defendants as to the causes of action, claims, and theories of relief alleged herein under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1988;

d) Economic and non-economic damages for Cody Criner's Estate pursuant to applicable Arizona and federal law;

e) Pre-death pain and suffering and the loss of enjoyment of life damages for Cody Criner's Estate, pursuant to 42 U.S.C. § 1983;

f) Litigation costs;

g) All remedies provided by 42 U.S.C. § 1983; and

h) Such other and further relief which may seem just and reasonable under the circumstances.

RESPECTFULLY SUBMITTED this 16th day of January, 2014.

BLACKWELL LAW OFFICE, PLLC

By: _____
JOCQUESE L. BLACKWELL
818 N. 5th Ave.
Phoenix, AZ 85003
Attorney for Plaintiff

ORIGINAL of the foregoing
Filed this 16th day of January, 2014 with:

Maricopa County Superior Court
201 West Jefferson Street
Phoenix, AZ 85003

By: _____